Commonwealth *v.* Roundtree, Appellant.

200

Submitted January 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*I. Leonard Hoffman,* for appellant.

*Arthur R. Makadon,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1970:

In this appeal, the appellant, Weldon Roundtree, challenges the validity of the judgment and conviction resulting from his general plea of guilty on May 15, 1963,[1] to the charge of murder.

It is urged that the plea was invalid "as not being voluntarily and intelligently made."

While Roundtree speaks in terms of the plea being "involuntary", what is really meant, as our subsequent discussion will manifest, is that the plea was entered

---

[1] The plea was entered in the presence of counsel, and, after an evidentiary hearing, Roundtree was adjudged guilty by the court of murder in the second degree. A prison sentence was imposed, but no appeal from the judgment was then entered. As a result of post-conviction relief proceedings instituted in 1969, Roundtree was permitted to appeal as if the same were timely filed.

unintelligently or unknowingly. *Parker v. North Carolina*, 397 U.S. 790, 90 S. Ct. 1458 (1970). And, of course, if this is true, the plea and conviction should be set aside because for a plea to be valid, it must not only be the free and voluntary act of the maker, but it must also be intelligently and knowingly entered. *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969).

In support of his position, Roundtree asserts two contentions which are more or less related. First, he says that when he plead guilty he thought he was merely admitting he fired the shot which caused the victim's death, and that he would be given the opportunity of showing the trial court that he shot in self-defense and was not criminally responsible. Secondly, he says his testimony at the plea proceedings indicated he acted in self-defense and, therefore, the court erred in not rejecting his guilty plea after hearing this testimony.

We shall explore the latter contention first.

We think it is logical and correct that if a defendant pleads guilty to a criminal charge, and in the next breath contravenes the plea by asserting facts which, if true, would establish that he is not guilty, then his guilty plea is of no effect and should be rejected. For on its face, such a situation would show that the plea was not entered with a complete comprehension of its impact. *Commonwealth v. Cavanaugh*, 183 Pa. Superior Ct. 417, 133 A. 2d 288 (1957) ; and *United States ex rel. Crosby v. Brierley*, 404 F. 2d 790 (3d Cir. 1968). In other words, a defendant should not be allowed to plead "guilty" from one side of his mouth and "not guilty" from the other. And when a plea of guilty is entered, it is not then for the court to determine guilt or innocence. *United States ex rel. Crosby v. Brierley*, supra. An examination of Roundtree's own testimony

during the plea proceedings is, therefore, necessary. And in substance, it is this:[2]

On the day involved, he was drinking in a bar when McKevin Wright made certain observations about a lady friend of Roundtree, which led to some dissension between them. Shortly thereafter, Bobby Delaney, another patron in the bar, told him "you know you don't supposed to be up here" and suddenly hit him in the jaw. Since he didn't wish further trouble, he left the establishment, but Wright, Delaney and others followed him outside. Delaney then challenged him to a fight and, in the physical combat that ensued, Roundtree knocked Delaney down. Wright then secured a banister post from a nearby porch and started hitting Roundtree over the head. Billy Redmond followed suit with something he broke off from a nearby motor vehicle, and, Delaney, regaining his feet, started assaulting him with a "bucket". Roundtree broke away and started to run when he saw a man in the crowd whom he didn't know "going to his belt for something . . . which is shining." He wrested a gun from this man's grasp and ran "about 30 or 40 yards," but his attackers, after pursuing him for "10 or 15 feet," abandoned the chase. Moreover, when Delaney, Wright and the others observed the gun in his hand, they fled from the scene in all directions but Roundtree noticed two re-entering the bar. He then turned around and also re-entered the bar. There he saw Alfred Washington sitting on a stool and when he started to get up, Roundtree "punched him." When Washington straightened up and started towards him, Roundtree fired a shot from the gun, and when Washington kept coming he fired two more shots (two shots entered Washington's body

---

[2] While the testimony of the witnesses called by the Commonwealth sharply disputed Roundtree's version of the occurrence, this evidence is not relevant in resolving the issue now under discussion.

and caused his immediate death). As he started to leave the bar, Roundtree noticed another patron start up from a stool, and thinking he was trying to stop his exit, Roundtree hit this individual in the face with the gun.

If the foregoing testimony of Roundtree established that he shot Washington in self-defense, the killing would be excusable homicide, Roundtree would not be criminally responsible, the guilty plea would be negated and should have been rejected. But this is not the case.

In *Commonwealth v. Johnston*, 438 Pa. 485, 489, 263 A. 2d 376, 379 (1970), we recently reiterated what a defendant must establish in order to successfully invoke the defense of self-defense. At page 489, we pertinently stated: "The following conditions must be satisfied before one can successfully invoke the defense of self-defense: 17 P.L.E. Homicide §§45, 46; 40 C.J.S. Homicide §114. (1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing: Commonwealth v. Minoff, 363 Pa. 287, 69 A. 2d 145 (1949). (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom: Commonwealth v. Collazo, 407 Pa. 494, 180 A. 2d 903 (1962); Commonwealth v. Miller, 313 Pa. 567, 170 A. 128 (1934); Commonwealth v. Russogulo, 263 Pa. 93, 106 A. 180 (1919). (3) The slayer must not have violated any duty to retreat or avoid the danger: Commonwealth v. Collazo, supra; Commonwealth v. Johnson, 213 Pa. 432, 62 A. 1064 (1906); Commonwealth v. Breyessee, supra."

Assuming that every word of Roundtree's testimony was true, it is clear that it did not, indeed, could not establish a viable defense of self-defense. Hence, his explanation of the fatal occurrence did not contravene his plea or raise a question of his innocence.

As a corollary to the issue just discussed, it is argued that in view of Roundtree's testimony, the court erred in not determining the degree of guilt to be voluntary manslaughter. Before the degree of guilt could be adjudicated, the true facts had to be found and in so doing, the court had not only the right, but the duty to weigh and consider all of the testimony, that of the Commonwealth as well as the defendant. And when the entire testimony is read in a light most favorable to the Commonwealth, as it must be, it is clear that an adjudication of guilt of murder in the second degree was warranted.

We return now to Roundtree's first contention, i.e., that he didn't fully understand the meaning of his guilty plea. As to this, the burden of proof was upon him,[3] and the court below did not err in concluding that this burden was not met, especially so in view of the testimony of Roundtree's trial counsel at the "PCHA" hearing, which completely refuted his claim in this respect.

Judgment affirmed.

---

[3] See *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A. 2d 196 (1968), and *United States ex rel. Grays v. Rundle*, 428 F. 2d 1401 (3d Cir. 1970).