Commonwealth *v.* Smith, Appellant.

Submitted September 24, 1973. Before JONES, C.J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stephen P. Swem* and *John J. Dean,* Assistant Public Defenders, and *George H. Ross,* Public Defender, for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 26, 1973:

In the early hours of November 7, 1971, appellant and one Gamalia Payne were customers in a tavern in the Homewood section of Pittsburgh. Due to their excessive consumption of alcohol, a minor altercation occurred and Payne left the premises. Shortly thereafter, appellant and a friend left for home, at which time they were confronted by Payne. Appellant was intimidated by Payne's verbal threats and, hence, when Payne ultimately reached for a cooking fork, appellant retreated. At the same time, however, he grabbed a metal lug wrench or tire iron. Payne fled but appellant, with designs of his own, took to the offensive. He chased Payne 450 to 475 feet before overtaking him and striking him several times on and about the skull with the tire iron. He succeeded in fracturing Payne's skull, from which injuries Payne died.

Appellant was indicted on counts of murder and voluntary manslaughter. On June 12, 1972, in open court while represented by counsel, appellant pleaded guilty to murder generally. The court heard testimony to determine the degree of guilt and concluded that appellant was guilty of second-degree murder.

On June 16, 1972, appellant, through counsel, filed a motion for new trial but this motion was subsequently withdrawn. One week later, appellant was sentenced to a term of five to fifteen years' imprisonment. A direct appeal was taken to this Court and the Public Defender of Allegheny County was appointed counsel for defendant. On August 29, 1972, the lower court rendered an opinion in which it considered the validity of appellant's guilty plea, concluding that the plea was voluntarily, knowingly and intelligently entered.

On October 3, 1972, we remanded appellant's case to the lower court, ordering an evidentiary hearing to determine the voluntariness of the guilty plea, the waiver of post-trial motions and other matters relevant in this appeal. On November 2, 1972, appellant filed a petition under the Post Conviction Hearing Act[1] alleging numerous infirmities in his conviction.[2] The evidentiary hearing on the direct appeal was consolidated with the Post Conviction Hearing petition on appellant's motion and a hearing was held on May 18, 1973. Relief was denied and this appeal followed.

Appellant now contends that his guilty plea was not voluntarily entered because it was based on assurances from counsel, who he alleges had made a

---

[1] Act of January 25, 1966, P. L. 1580, §5, *as amended*, 19 P.S. §1180-5 (Supp. 1973).

[2] Appellant alleged: (1) the introduction of a coerced confession into evidence; (2) the introduction into evidence of a statement obtained in the absence of counsel at a time when representation is constitutionally required; (3) the infringement of his privilege against self-incrimination under both federal and state law; (4) the denial of his constitutional right to representation by competent counsel; (5) a plea of guilty unlawfully induced; (6) the obstruction by state officials of appellant's right of appeal; and (7) the abridgement of a right guaranteed by the Constitution or laws of this state or by the Constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the Constitution required retrospective application of that right.

plea bargain with the District Attorney, that his sentence would be from two to ten years and that his responsibility would rise no higher than voluntary manslaughter. He urges that he is now entitled either to withdraw that plea or to receive a sentence reduced to the terms of the bargain because the prosecutor's promise was not kept. Appellant further maintains that this plea bargain had been withheld from the court in opposition to our directions in *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 526 (1971).

These allegations raised a question of credibility and the PCHA hearing judge chose to believe the testimony given by counsel that a discussion with the District Attorney had taken place but that no plea bargain had been made.[3] On the face of the record, we cannot say that the hearing court abused its discretion in finding that appellant had not proven that there was a plea bargain. *Commonwealth v. Dickerson*, 449 Pa. 70, 295 A. 2d 282 (1972); *Commonwealth v. Godfrey*, 434 Pa. 532, 254 A. 2d 953 (1969); *Commonwealth v. Holl*, 434 Pa. 312, 254 A. 2d 11 (1969). No promise was made by the District Attorney and, in fact, his recommendation was for a greater sentence. While appellant argues that his guilty plea was induced by a belief that he would receive a sentence of two to ten years, he im-

---

[3] The following colloquy took place at the PCHA hearing: "THE COURT: Q. Yes, but did he say to you that he had discussed it with the District Attorney? [COUNSEL FOR APPELLANT]: A. Well, see. . . . Q. Was there a plea bargain situation here? A. There was a conversation between me and the District Attorney. He offered five to twenty years and I felt the maximum was excessive, and I told him that. Q. I'm talking about as to the grade of the offense. A. Second degree murder. Q. Was the defendant aware of this? A. I don't recall whether he was or not, but I explained to him that in my opinion that it might be voluntary manslaughter, but I said it would be either second degree or voluntary manslaughter depending on how the judge viewed the testimony, but I certainly told him that it would not be murder in the first degree."

peached himself on this point by later asserting that the plea was motivated by a fear of spending the rest of his life in jail. And, finally, appellant unequivocally denied the existence of a promise by counsel or by the District Attorney when the lower court questioned him on his understanding of the significance and import of his plea.[4]

Appellant also argues that his guilty plea was not voluntarily entered when his testimony raised an issue of self-defense.[5] This argument is meritless. Assuming that appellant did raise a plausible self-defense claim, the testimony giving rise to that claim was not made contemporaneously with the entry of the guilty plea. *Commonwealth v. Thomas*, 450 Pa. 548, 301 A. 2d 359 (1973); *Commonwealth v. Slavik*, 449 Pa. 424, 297 A. 2d 920 (1972). We repeat what we said in *Thomas:* "The only statements which can be considered by the trial judge in determining whether to accept a guilty plea are those made at the time the plea is entered." 450 Pa. at 553, 301 A. 2d at 363. The statements which appellant urges establish self-defense were made at the degree-of-guilt hearing subsequent to the entry of his plea. Furthermore, when the sentencing judge asked if appellant was claiming self-defense at that point, he was assured by counsel that the questioned testimony was introduced only to mitigate the offense.

Order affirmed.

---

[4] We might add that this inquiry and the ensuing explanation of the plea by the court followed our recommendations in *Commonwealth v. Garrett*, 425 Pa. 594, 229 A. 2d 922 (1967). See also *Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 223 A. 2d 699 (1966).

[5] See *Commonwealth v. Chruscial*, 447 Pa. 17, 288 A. 2d 521 (1972); *Commonwealth v. Blackman*, 446 Pa. 61, 285 A. 2d 521 (1971); *Commonwealth v. Shank*, 446 Pa. 59, 285 A. 2d 479 (1971); *Commonwealth v. Sampson*, 445 Pa. 558, 285 A. 2d 480 (1971); *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A. 2d 709 (1970); *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969).